**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SCIENCE APPLICATIONS
INTERNATIONAL CORPORATION (NOW
KNOWN AS LEIDOS, INC.),

               Petitioner

v.

THE HELLENIC REPUBLIC,

               Respondent.

Civil Action No. 18-cv-327

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 1610(c)

James E. Berger
Charlene C. Sun

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York, 10036
Tel: 212-556-2202
Fax: 212-556-2222
jberger@kslaw.com
csun@kslaw.com

*Attorneys for Petitioner Leidos, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................II

I.      PRELIMINARY STATEMENT ..........................................................................................1

II.     FACTUAL BACKGROUND...............................................................................................2

          A.      The Award and Prior U.S. Proceedings.................................................................2

          B.      The Greek Proceedings...........................................................................................2

          C.      Greece's "Offer to Pay".........................................................................................3

III.    ARGUMENT........................................................................................................................4

          A.      Greece's Opposition is Tantamount to a Stay of Enforcement in Deference
                to Greek Proceedings, Which is Unwarranted and Improper .................................5

               1.      Greece Has Not Satisfied the Requirements for a Stay of Execution..........5

               2.      International Comity Does Not Weigh in Favor of a Stay..........................7

          B.      Relief Pursuant to 28 U.S.C. § 1610(c) is Warranted .............................................8

               1.      Greece Misconstrues the Requirements of § 1610(c) .................................8

## TABLE OF AUTHORITIES

**Cases**

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*,
    798 F. Supp. 2d 260 (D.D.C. 2011) ...................................................................................10

*Baker v. Socialist People's Libyan Arab Jamahirya*,
    810 F. Supp. 2d 90 (D.D.C. 2011) .................................................................................4, 10

*Europcar Italia, S.P.A. v. Maiellano Tours, Inc.*
    156 F.3d 310 (2d Cir. 1998)...........................................................................................1, 6

*Ferrostaal Metals Corp. v. S.S. Lash Pacifico*,
    652 F. Supp. 420 (S.D.N.Y. 1987) .....................................................................................9

*Gadsby & Hannah v. Socialist Republic of Rom.*,
    698 F. Supp. 483 (S.D.N.Y. 1988) .....................................................................................9

*Gold Reserve v. Bolivarian Republic of Venez.*,
    No. 14-2014-JEB, 2016 WL 836574 (D.D.C. Jan. 20, 2016).....................................................9

*Hartford Fire Ins. Co. v. Cal.*,
    509 U.S. 764 (1993)............................................................................................................7

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    No. Civ.A. H-01-0634, 2002 WL 32107929 (S.D. Tex. Jan. 25, 2002)...................................9

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez.*,
    87 F. Supp. 3d 573 (S.D.N.Y. 2015), *rev'd on other grounds*, 863 F.3d 96 (2d
    Cir. 2017) ............................................................................................................................6

*Nemaizer v. Baker*,
    793 F.2d 58 (2d Cir. 1986)..................................................................................................8

*Owens v. Republic of Sudan*,
    141 F. Supp. 3d 1 (D.D.C. 2015) ...............................................................................8, 9, 10

*Royal & Sun Alliance Co. of Can. v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006)..................................................................................................7

*Sargent v. Columbia Forest Prod., Inc.*,
    75 F.3d 86 (2d Cir. 1996)....................................................................................................5

*Tucker Anthony Realty Corp. v. Schlesinger*,
    888 F.2d 969 (2d Cir. 1989)................................................................................................5

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
    126 F.3d 15 (2d Cir. 1997)......................................................................................................5

**Statutes**

28 U.S.C. § 1610(c) .............................................................................................1, 8, 9, 10

28 U.S.C. § 1963.............................................................................................................2, 3

Petitioner Leidos, Inc. respectfully submits this Reply Memorandum of Law in further support of its Motion (the "Motion") for an order finding that a "reasonable period of time," within the meaning of 28 U.S.C. § 1610(c), has elapsed since the entry of the amended judgment (the "Judgment") issued by the U.S. District Court for the District of Columbia ("D.C. Court") (D.D.C. Dkt., ECF No. 69)[1] and registered in this Court on July 11, 2018. The Judgment confirmed an arbitral award ("Award") against Respondent The Hellenic Republic ("Greece"), which has subsequently refused to satisfy the Judgment and continues to seek to collaterally attack the Judgment through proceedings in its own home courts.

I.     PRELIMINARY STATEMENT

Over **five years** have passed since Petitioner prevailed in an arbitration against Greece and an arbitral tribunal issued an award ordering Greece to pay damages for breach of contract – a contract associated with the 2004 Olympic Games. Greece opposes the Motion primarily on the ground that the Greek Supreme Court is reviewing the Award yet again. But the Greek Supreme Court's disposition of the case is simply not relevant to the Motion. While, in certain circumstances, a U.S. court may stay a proceeding seeking enforcement of a foreign arbitration award based on the pendency of proceedings to annul that award,[2] the **Motion does not ask this Court to enforce the Award**; the D.C. Court, following lengthy proceedings commenced in 2013, has already done that, and a U.S. judgment has been entered. If Greece will not pay that Judgment voluntarily, this Court is duty-bound to allow Petitioner to enforce it.

Aside from asking this Court to effectively stay the Judgment in deference to Greece's second trip to its own Supreme Court, Greece contends that Leidos should not be permitted to

---

[1] References to the DC Court's docket entries are indicated hereafter as "D.D.C. Dkt., ECF No. XX."

[2] *See* United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), Art. VI, 21 U.S.T. 2517 (Jun. 10, 1958); *see also Europcar Italia, S.P.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316–18 (2d Cir. 1998).

enforce the Judgment because Greece has "offered to pay."  This "offer," however, has been

conditioned upon making its payment capable of immediate recoupment in the event the Greek

Supreme Court reverses its own prior order and annuls the Award.  That is, Petitioner

respectfully submits, no "offer" at all.  Greece — not Leidos — is the judgment debtor in this

case.  If Greece is not prepared to voluntarily satisfy the Judgment in full at this time, then the

Motion should be granted and execution allowed to begin.

## II.     FACTUAL BACKGROUND

### A.     The Award and Prior U.S. Proceedings

The Award was rendered on July 2, 2013.  In light of Greece's continual refusal to honor

the Award, Leidos filed a petition to enforce the Award in the D.C. Court.  Greece subsequently

sought to set aside the Award before its own courts.  The D.C. Court stayed its proceedings for

nearly three years after Greece's first successful attempt to annul the Award, and when those

proceedings concluded with an order by the Greek Supreme Court vacating the annulment, the

D.C. Court confirmed the Award, on January 6, 2017.  D.D.C. Dkt., ECF No. 55.  The Judgment

was entered on May 28, 2018, following an appeal to the U.S. Court of Appeals for the District

of Columbia Circuit concerning interest and the conversion of the Award from Euros to US

Dollars.  D.D.C. Dkt., ECF No. 69.  Greece did not appeal the recognition of the Award, and

Leidos subsequently registered the Judgment in this Court as of right pursuant to 28 U.S.C. §

1963 on July 11, 2018 (ECF No. 1).

### B.     The Greek Proceedings

Greece's opposition to the Motion is based in large part on the continued pendency of

proceedings in Greece, which it incorrectly suggests would nullify the Judgment or render its

enforcement moot.  Greece's description of the Greek proceedings, however, glosses over

several key facts.  First, while the Athens Court of Appeals ("Athens Court") initially annulled

the Award, that decision was later reversed and vacated by the Greek Supreme Court.  *See* Pelecanos Dec., at ¶ 9.  On remand, the Athens Court, applying the deferential standard imposed by the Greek Supreme Court, denied Greece's application to set aside the Award.  *Id.*

Greece has now asked its Supreme Court to review the second Athens Court's decision, notwithstanding that it was rendered in accordance with the Greek Supreme Court's own instructions.  The purported basis for this second appeal is Greece's argument that it was "unable to present its case" concerning alleged bribery and corruption to the arbitral tribunal because criminal investigations related to underlying project had not yet concluded at the time of the arbitration.  However, Greece fails to mention that (i) it **did** present evidence in support of its allegations in the arbitration, (ii) the tribunal thoroughly analyzed that evidence and held that Greece's allegations were unfounded, and (iii) the criminal investigations have not, to date, turned up any new evidence since the arbitration took place.  *See* Pelecanos Dec., at ¶¶  8, 10.

Further, although Greece makes much of the fact that the Greek Supreme Court stayed enforcement of the Award in Greece pending the resolution of Greece's current appeal, that decision involved no determination concerning the likelihood of success of Greece's appeal, and was based solely on the fact that it would be "inconvenient" for Greece to recoup the amount of the Award from Leidos should the appeal be resolved in Greece's favor in light of Petitioner's lack of assets located in Greek territory.  *See* Pelecanos Dec., at ¶ 11.

### C.    Greece's "Offer to Pay"

Greece attempts to distinguish this case from others in which 1610(c) relief was granted by trumpeting its self-assessed "good faith" and purported willingness to pay the Judgment. Greece Opp., at p. 4.  Petitioner respectfully submits that Greece's statements concerning its willingness to pay have been both inconsistent and contradicted by Greece's actions, which fail to demonstrate any intention on Greece's part to pay the Judgment voluntarily.  Indeed, shortly

after representing to Leidos on or around July 3, 2018 through its agent Mr. Katopodis that it would voluntarily pay the Judgment, Greece filed a petition seeking to annul the Athens Court's decision to uphold the Award, and further requested a temporary restraining order halting enforcement of the Award.  *See* Pelecanos Dec., at ¶¶ 15–16.  Further, after agreeing to pay the Award, Greece then decided that before it would make any payment, Leidos would be required to post a letter of guarantee to Greece in the amount of the Judgment.  *Id.* at ¶ 17.  This "offer to pay" is thus illusory inasmuch as it would require Leidos to issue an immediately-executable bank guarantee that could be called at will if the Greek Supreme Court annuls the Award, and can only be seen for what it truly is — a circular delay tactic centered on frustrating the enforcement of the Judgment while it prosecutes its second attempt to annul the Award.

III.    **ARGUMENT**

Greece has been on notice of its payment obligations since the Award was first confirmed in January 2017.  Instead of satisfying its obligations, it is still seeking every opportunity to stall satisfaction of the Judgment, including repeated recourse to the Greek courts.  Indeed, the list of hurdles that Greece has erected in the path to its "willingness" pay the Judgment – beginning with its requirement that Petitioner post a letter of guarantee, then the stay of enforcement of the Award it sought and obtained from the Greek Supreme Court, and now the alleged need for a resolution of its appeal before the Greek Supreme Court — grows longer with every passing day. The Greek Supreme Court, however, cannot reverse or vacate the court's Judgment, which is final and unappealable, and under black letter federal law, this Court should reject Greece's request for a de facto stay and allow Leidos to commence enforcement without further delay. *See Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 96 (D.D.C. 2011) (allowing immediate enforcement on grounds that a stay is an "extraordinary remedy").

4

### A.  Greece's Opposition is Tantamount to a Stay of Enforcement in Deference to Greek Proceedings, Which is Unwarranted and Improper

#### 1.  Greece Has Not Satisfied the Requirements for a Stay of Execution

Viewed in its totality, Greece's opposition to the Motion is nothing more than a request for a stay of execution of the Judgment pending the outcome of its latest appeal to the Greek Supreme Court.  Greece makes this request, however, without even attempting to satisfy the legal standard for obtaining a stay.  Indeed, Petitioner submits that Greece cannot demonstrate (1) a likelihood of success on the merits;[3] (2) irreparable harm that would result if enforcement is not stayed;[4] (3) that the equities weigh in favor of Greece (which has steadfastly refused to satisfy the arbitral award underlying the Judgment for over five years — in contravention of its obligation under the ICC Rules to carry out the Award "without delay" — and is now seeking to collaterally attack this Court's Judgment through judicial proceedings in its own courts notwithstanding its representations to Petitioner that it would not do so); or (4) that public interest factors (which strongly support the prompt enforcement of foreign arbitral awards in accordance with the United States' obligations under the New York Convention[5] and the policy in favor of protecting duly-rendered U.S. judgments[6]) weigh in favor of a stay.

---

[3] *See* Pelecanos Dec. at ¶ 5 ("the Award remains valid and binding as a matter of Greek and international law"); *id.* at ¶ 11 ("the Greek Supreme Court's decision suspending enforcement of the Award involved no consideration of the merits of The Hellenic Republic's appeal").

[4] Case law in this Circuit clearly shows that irreparable harm requires an injury that "the injury must be one requiring a remedy of more than mere money damages." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).

[5] *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc*., 126 F.3d 15, 20 (2d Cir. 1997) (noting the "pro-enforcement" bias of the New York Convention).

[6] *Sargent v. Columbia Forest Prod., Inc*., 75 F.3d 86, 89 (2d Cir. 1996) (noting that "[t]he Supreme Court has repeatedly underscored the sanctity of final judgments in our federal judicial system" given the public policy that there should be an end to litigation, citing *Baldwin v. Iowa State Traveling Men's Assoc*., 283 U.S. 522, 525 (1931)).

Greece relies on a single case in support of its request for a stay, *Mobil Cerro Negro, Ltd. v. Bolivarian Rep. of Venez.* That case does not provide support for Greece's request for a stay and is clearly distinguishable from the present matter. In *Mobil Cerro*, respondents argued for a stay of enforcement of the judgment because the arbitration was not over. Specifically, the arbitral tribunal in that case was, at the same time enforcement proceedings were commenced in the United States, considering whether the amount of the award should be offset in recognition of partial payment the petitioner allegedly received. *See* 87 F. Supp. 3d 573, 603 (S.D.N.Y. 2015), *rev'd on other grounds*, 863 F.3d 96 (2d Cir. 2017). Here, in contrast, the arbitration has been over for **five years**, and there is no question concerning residual jurisdiction of the arbitral tribunal, the finality of the underlying arbitral award confirmed by the D.C. Court, or the finality of the Judgment (which is no longer subject to appeal in the United States).

Notably, Greece also fails to acknowledge that its previous request to stay the D.C. Court's proceedings pending the outcome of the remanded proceedings before the Athens Court was denied. *See* D.D.C. Dkt., ECF No. 54. The D.C. Court denied that request for a stay on grounds that the factors articulated in *Europcar* were "overwhelmingly in favor of the Petitioner." *See* D.D.C. Dkt., ECF No. 54, at 10 (citing *Europcar*, 156 F.3d at 316–18). Specifically, the D.C. Court noted with respect to the balance of possible hardships that "it is certainly clear that the Respondent, the Hellenic Republic, will not have to endure possible hardship given the fact that it is a country with a treasury and all the resources that a government has, whereas, the Petitioner is a private firm that may well suffer hardship for not gaining access to the substantial amount of money awarded …" *See* D.D.C. Dkt., ECF No. 54, at 9.

The procedural postures of the U.S. and Greek proceedings have changed significantly since the time that Greece's first stay request was denied by the D.C. Court, but the rationale for

6

denying a stay is even stronger now than it was then.  In the U.S., the D.C. Court confirmed the

Award, and entered the Judgment, which is final, binding, and no longer subject to appeal.  In

Greece, the Athens Court on remand confirmed the validity of the Award, and the only

proceedings pending in Greece are an appeal through which Greece seeks — for the second time

— the Greek Supreme Court's review of the Athens Court's decision, which was issued in

accordance with the instructions given to it by the Greek Supreme Court.  *See* Pelecanos Dec., ¶

9.  Under the present circumstances, there is even less justification for a stay.

### 2.      International Comity Does Not Weigh in Favor of a Stay

While Greece does not explicitly invoke comity principles in support of its request for a

stay, it is unmistakably asking this Court to suspend enforcement of the Judgment in deference to

Greek court proceedings.  Greece is thus seeking "comity of the courts," or a request that this

court stay its jurisdiction in recognition of the judicial acts of another nation.  *Hartford Fire Ins.*

*Co. v. Cal.,* 509 U.S. 764, 817 (1993).  Circuit law, however, strongly disfavors such stays; to the

extent that comity considerations apply, they favor enforcement of the Judgment.

In *Royal & Sun Alliance Co. of Can. v. Century Int'l Arms, Inc.*, the Second Circuit held

that the "mere existence" of foreign proceedings is not sufficient alone to negate a district court's

"virtually unflagging obligation . . . to exercise the jurisdiction given [to the court]."  466 F.3d

88, 92 (2d Cir. 2006).  When considering the comity concerns articulated in *Royal & Sun* —

specifically, respect for foreign courts, fairness to litigants, and judicial efficiency — it is clear

these factors weigh in favor of Petitioner.  *Id.* at 94.  First, as the D.C. Court noted in denying

Greece's first request for a stay, because Greece did not commence any proceedings in Greece

prior to Petitioners' commencement of proceedings in the United States, "there needs to be no

concern about international comity."  *See* D.D.C. Dkt., ECF No. 54, at 8.  Second, the parties

have already litigated the validity of the Award in multiple judicial venues (and indeed litigated

7

the issues forming the basis of Greece's appeal before the Greek Supreme Court in the underlying arbitration).  The results of that extensive litigation are (1) a final U.S. Judgment, and (2) decisions from the Greek Supreme Court and Athens Court supporting the validity of the Judgment.  *See* Pelecanos Dec., at ¶¶ 5, 9.  There would be nothing fair or efficient about staying execution of the Judgment in favor of allowing Greece a third bite at the apple in its own home courts.  Given the length of time that has lapsed in connection with litigating a resolution of this dispute, and the considerable judicial resources expended in aid of defending the results of that litigation, it is clear that comity factors favor immediate enforcement of the Judgment.  *See Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (noting the strong interest in preserving the finality of judgments and that final judgments should not "be lightly reopened").

### B.    Relief Pursuant to 28 U.S.C. § 1610(c) is Warranted

In assessing whether a reasonable period of time has elapsed for purposes of 28 U.S.C. Section 1610(c), courts focus on the "procedures necessary for the foreign state to pay the judgment (such as the passage of legislation), evidence that the foreign state is actively taking steps to pay the judgment, and evidence that the foreign state is attempting to evade payment of judgment."  *See, e.g., Owens v. Republic of Sudan*, 141 F. Supp. 3d 1, 8 (D.D.C. 2015).  Aside from empty reassurances (which are themselves contradicted by Greece's own actions taken to undermine the Award in the Greek courts), there is no evidence that Greece is willing in good faith to satisfy the Judgment voluntarily.  Greece's opposition to the Motion is without merit.

#### 1.    Greece Misconstrues the Requirements of § 1610(c)

First, Greece misconstrues how courts have interpreted the meaning of a "reasonable period" under Section 1610(c), arguing that the "five month period since the [Judgment] is miniscule in relation to the timing of this dispute as a whole."  This is irrelevant.  As the legislative history of Section 1610(c) makes clear, the purpose of a "reasonable period" is to give

8

foreign sovereigns sufficient time to arrange payment of a judgment. *Owens,* 141 F.Supp. 3d at 10–11 ("legislative history suggest that the purpose of §1610(c)'s reasonable-period requirement is to allow foreign states the opportunity to make arrangements for voluntary payment"). Courts have consistently found that periods of less than five months to constitute a "reasonable period." *See, e.g., Gadsby & Hannah v. Socialist Republic of Rom.*, 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (finding reasonable period of time after two months); *see also Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, No. Civ.A. H-01-0634, 2002 WL 32107929, at \*2 (S.D. Tex. Jan. 25, 2002) (finding fifty days a "reasonable period"). The length of time it has taken to resolve the parties' underlying dispute has no bearing on this analysis. Greece's argument would lead to an absurd result, inasmuch as it would reward a sovereign for delaying enforcement of an arbitral award. If anything, the length of time that has passed since the arbitration demonstrates that Greece has had ample notice of its obligation to pay, and should tip the scales further in favor of immediate enforcement.

Second, Greece incorrectly implies that a court must find that a State is actively taking measures to evade payment, including moving its U.S. assets, before Section 1610(c) relief can be granted. That proposition, however, has no support in the caselaw: While the active dissipation of assets is one factor a court may consider in determining whether a reasonable period of time has lapsed, it is by no means a dispositive requirement. Courts routinely allow the enforcement of judgments without finding that the foreign state is actively moving assets to evade enforcement. *See Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F. Supp. 420, 423 (S.D.N.Y. 1987) (three months was a "reasonable period" due to respondent's failure to demonstrate that "steps were being taken to satisfy the judgment"); *see also Gold Reserve v. Bolivarian Republic of Venez.*, No. 14-cv-2014, 2016 WL 836574 (D.D.C. Jan. 20, 2016)

(allowing execution solely on the basis that two months had passed since entry of judgment). Indeed, courts interpreting Section 1610(c) only require that "each defendant must receive notice that judgment has been entered against it; and second, each defendant must be given an adequate opportunity to respond" before a motion under Section 1610(c) can be granted. *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260, 267 (D.D.C. 2011).

As explained above, although Greece has pointed to previous statements it has made that it is willing to satisfy the Judgment, Greece's subsequent actions undermine those statements to the point of rendering them completely meaningless. The mismatch between Greece's words and actions demonstrates an intent to mislead Petitioner and the Court into delaying enforcement of the Judgment for as long possible, and alone provides a basis for allowing immediate enforcement of the Judgment. *See Ferrostaal Metals Corp.*, 652 F. Supp. at 423 (finding a reasonable period had elapsed after three months partly due to respondent's failure to show that "steps were being taken to satisfy the judgment").

Though courts must consider whether a delay in execution is necessary to accommodate a foreign state's need to implement "procedures necessary for the foreign state to pay the judgment (such as the passage of legislation)," *see, e.g., Owens,* 141 F. Supp. 3d at 8, Greece has cited no internal procedure or legislation that is necessary, or that it is attempting to implement, in support of its request to delay execution. Rather, Greece's refusal to pay rests upon its position that it should not have to pay until Petitioner posts the full amount of the Judgment under terms that would allow Greece to claw back any payment it makes while providing Petitioner with no recourse. Put simply, Greece is not taking steps to facilitate payment; it is erecting hurdles to justify why it should not have to pay. Under these circumstances, a delay of enforcement will only serve hinder, not assist with, satisfaction of the Judgment.

\*      \*      \*

WHEREFORE, Leidos respectfully requests that the Court enter an order pursuant to 28

U.S.C. § 1610(c) finding that a reasonable period of time has elapsed following the D.C. Court's

entry of the Judgment.


Dated:  New York, New York
        December 21, 2018


                                        Respectfully submitted,


                                        /s/ James E. Berger
                                        James E. Berger (N.Y. Bar No. 2644284)
                                        Charlene C. Sun (N.Y. Bar No. 4716494)
                                        KING & SPALDING LLP
                                        1185 Avenue of the Americas
                                        New York, New York 10036
                                        Tel: 212-556-2202
                                        Fax: 212-556-2222
                                        jberger@kslaw.com
                                        csun@kslaw.com