December 28, 2018

**Via ECF and Email**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007
Torres_NYSDChambers@nysd.uscourts.gov

      Re:    *Science Applications International Corporation v. The Hellenic Republic*, Civil Action No. 18-mc-327

Dear Judge Torres:

Pursuant to Fed. R. Civ. P. 26(c), Local Civil Rule 7.1(d) and Individual Practice II.C, Respondent the Hellenic Republic and Petitioner Leidos, Inc. ("Leidos") hereby jointly notify the Court of a discovery dispute. The Hellenic Republic requests a protective order precluding Leidos from taking discovery until a reasonable period of time following the Court's decision on Leidos's pending motion for relief under 28 U.S.C. §1610(c). Leidos opposes this request and has reserved the right to cross-move to compel compliance with its discovery requests.

Leidos filed its motion for §1610(c) relief on October 22, 2018. D.E. 3. On December 7, 2018, the Hellenic Republic filed its opposition. D.E. 10-11. Leidos filed its reply on December 21, 2018. D.E. 14.

On October 23, 2018, Leidos served document requests. On November 7, 2018, Leidos served interrogatories and a deposition notice under Fed. R. Civ. P. 30(b)(6). Leidos's document requests, interrogatories, and deposition notice are attached hereto as Exhibits A, B, and C, respectively.

The parties have conferred on several occasions by telephone and email in a good faith attempt to resolve the discovery issue. Participating counsel were James Berger on behalf of Leidos and Andrew Schwartz on behalf of the Hellenic Republic. The most recent telephone conferences were on December 13, 2018 at 10:25 a.m. for approximately 8 minutes, and December 20, 2018, at 4:30 p.m. for approximately 10 minutes.

### I.    The Hellenic Republic's Request for a Protective Order

Pursuant to Fed. R. Civ. P. 26(c), the Hellenic Republic respectfully requests that the Court order that the Hellenic Republic is not required to respond to Leidos's document requests, answer its interrogatories, or produce a deposition witness until a reasonable time following the Court's decision on Leidos's motion for relief under §1610(c), in the event that the Court grants such relief.

The Honorable Analisa Torres
December 28, 2018
Page 2

The Court should issue a protective order because Leidos's discovery requests are premature. Leidos seeks detailed, global discovery of all of the Hellenic Republic's economic activity in the hope of finding attachable assets to satisfy a judgment from the District Court for the District of Columbia ("D.D.C.") But as the Hellenic Republic demonstrated in its §1610(c) opposition, no assets may be subject to attachment. The Greek Supreme Court recently heard argument in the Hellenic Republic's appeal to annul the arbitral award underlying the D.D.C. judgment. The Greek Supreme Court has enjoined enforcement of the award pending its decision on the Hellenic Republic's appeal. If the award is annulled, then the judgment will be subject to vacatur, leaving Leidos with no judgment to enforce. If the Hellenic Republic's appeal does not succeed, then it will abide by its legal commitments, in accordance with Greek law, concerning payment of the award. Either way, there would be no basis for attachment. Thus, there is no need to subject the Hellenic Republic to the burdens of discovery, especially before the §1610(c) motion is decided, and especially given that Greece has offered to pay the award with security in the interim.

Moreover, the discovery that Leidos seeks is overly broad, oppressive, and invasive. Leidos served 75 document requests, many with multiple subparts, through which it seeks essentially all documents concerning all assets, transactions, or debts relating to the Hellenic Republic, or any of its agencies and instrumentalities, anywhere in the world since 2009. The requests are too numerous and lengthy to recount in detail here, but for example, Leidos requests "all Documents and Communications" concerning "any discussion" involving the Hellenic Republic or any of its instrumentalities concerning any acquisition or any issuance of any debt anywhere "outside of the United States." Ex. A at Request No. 51. Leidos also seeks "All Documents and Communications concerning Greece's ownership interests in any entity" without limitation. *Id.* at Request No. 60. Leidos even goes so far as to request aircraft maintenance records. *Id.* at Request No. 54. In addition, Leidos demands that the Hellenic Republic send a representative to New York in early January to testify about anyone who might have any information about these sweeping topics. Ex. C.

Leidos served similarly burdensome interrogatories. For instance, Leidos asks the Hellenic Republic to identify all debts owed to it and all payments it has made anywhere in the United States or the European Union since 2013. Ex. B. at Ints. 6-7. Such interrogatories far exceed the scope permitted under Local Civil Rule 33.3. That rule limits interrogatories at this stage to those seeking the names of witnesses, computation of damages, and the existence, custodian, location, and general description of relevant documents. Leidos has utterly disregarded that restriction.

Leidos's broad discovery requests are not reasonably calculated to locate assets that may be subject to attachment. *See* Fed. R. Civ. P. 69(a); *Republic of Arg. v. NML Capital, Ltd.*, 573 U.S. 134, 138 (2014). Leidos seeks discovery concerning all economic activity of the Hellenic Republic of any type in any place. However, only assets located in New York and used for commercial purposes could be subject to attachment by this Court, where Leidos specifically chose to enforce its judgment rather than in D.D.C., which heard the underlying case. *See* 28 U.S.C. §§1609-1610(a); *see Republic of Arg.*, 573 U.S. at 144 ("[I]nformation that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place"). For example, in document request 33, Leidos seeks "all documents and communications" identifying

B4931290.1

The Honorable Analisa Torres
December 28, 2018
Page 3

any debt owed by the Hellenic Republic to anyone outside the United States. In request 45, Leidos seeks "all non-privileged documents" concerning engagement of or payments to any legal counsel outside the United States since 2009. Such requests on their face seek information about non-commercial assets, which cannot be subject to execution.

      Leidos's discovery requests further exceed the scope contemplated by Rule 69(a) because they seek information concerning assets and transactions of agencies or instrumentalities of the Hellenic Republic. Discovery concerning such non-party entities "is not generally contemplated by Rule 69(a)" and permitted "only where the relationship of the judgment debtor and the non-party is sufficient to raise a reasonable doubt as to the bona fides of the transfer of assets between them." *GMA Accessories v. Elec. Wonderland, Ind.*, 2012 U.S. Dist. LEXIS 72897, at *14 (S.D.N.Y. 2012); *see also Uniden Corp. v. Duce Trading Co.*, 1993 U.S. Dist. LEXIS 10441, at *2 (W.D.N.Y. July 19, 1993) (stating that post-judgment discovery of non-party assets requires a "somewhat heightened showing of necessity and relevance -- i.e., at least some demonstration of concealed or fraudulent transfers or alter ego relationships with the judgment debtor"). Leidos must offer more than a "hunch" or "bare allegations" to obtain discovery about alter ego status. *NML Captal Ltd. v. Republic of Arg.*, 2015 U.S. Dist. LEXIS 161067, at *7-8 (N.D. Cal. Dec. 1, 2015). Leidos has not offered even that much. Leidos has not presented any good faith basis to believe that any agencies or instrumentalities are alter egos of the Hellenic Republic or have improperly transferred assets to or been the transferee of assets from the Hellenic Republic.[1]

      The breadth of Leidos's requests, and the vast amount of time and expense that would be required to search for, review, and produce the requested information, are mind-boggling. Moreover, the requests infringe the Hellenic Republic's sovereignty interests insofar as they call for the production of a large amount of diplomatically sensitive information, such as documents about the Hellenic Republic's foreign debts and relationships with legal counsel. *See, e.g.*, Ex. A at Request Nos. 33, 45. As the Second Circuit "stress[es]," a foreign sovereign "is entitled to a degree of grace and comity." *Aurelius Capital Master, Ltd. v. Republic of Arg.*, 589 Fed. Appx. 16, at *6-7 (2d Cir. Dec. 23, 2014). The Court should accordingly order that Leidos may not take discovery at least until a reasonable time following resolution of its §1610(c) motion, and only if that motion succeeds.[2]

## II.    Leidos's Response

---

[1] Leidos relies on cases that do not support its position. In *Funnekotter v. Republic of Zimb.*, the petitioners were required to "proffer evidence to the Court tending to show" alter ego relationships between Zimbabwe and alleged instrumentalities before any potential sanctions could be issued against Zimbabwe in the event that the alleged instrumentalities, like Zimbabwe, declined to appear in the case. 2011 U.S. Dist. LEXIS 130363, at *11 (S.D.N.Y. Nov. 10, 2011). In *First City, Texas-Houston, N.A. v. Rafidain Bank*, the plaintiff sought discovery about the relationship between the two defendants, not a global fishing expedition like Leidos demands. 281 F.3d 48, 49-50 (2d Cir. 2002).

[2] If Leidos is permitted to take discovery, the Hellenic Republic reserves its right to object to any specific interrogatory, request, or 30(b)(6) topic on any ground, including without limitation, the confidentiality of the information sought.

B4931290.1

The Honorable Analisa Torres
December 28, 2018
Page 4

Greece's refusal to comply with the discovery served upon it rests largely on its argument that discovery should be stayed pending its second attempt to annul the underlying arbitral award in its own courts. In effect, Greece seeks to preclude post-judgment discovery for as long as it can maintain proceedings challenging the arbitral award in the Greek courts.[3] There is no support for that position, and the Court should reject it.

Greece has not even attempted to demonstrate that it is entitled to a stay of either execution or discovery, and it has cited no legal authority for the proposition that post-judgment discovery may not proceed until the Court authorizes execution to go forward. As the Supreme Court has recognized, foreign states do not enjoy any immunity from discovery under the FSIA, *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 142, 134 S. Ct. 2250, 2256 (2014) (holding that the scope of post-judgment discovery is no different with respect to a foreign state judgment debtor than with an ordinary private judgment debtor, as "[t]here is no third provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets"), and that holding conclusively undermines Greece's suggestion that discovery should be tied to the Court's Section 1610(c) finding. Section 1610(c), which provides that "[n]o attachment or execution … shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment..." says nothing about discovery. Moreover, a judgment creditor is not required to make a motion before commencing post-judgment discovery. *See Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, No. 91-7776, 1995 WL 662120 at *2 (S.D.N.Y. Nov. 9, 1995). Accordingly, there is no legal basis for Greece's apparent contention that the Court must grant Petitioner's pending Section 1610(c) motion in order for post-judgment discovery to commence. Indeed, such a limitation would not make sense, since, as the Supreme Court has noted, the entire reason for post-judgment discovery is to enable a judgment creditor to determine where to direct its enforcement efforts, since it typically "does not yet know what property [the debtor] has and where it is, let alone whether it is executable under the relevant jurisdiction's law." *NML Capital*, 573 U.S. at 144-45.

Greece's remaining immunity-related objections to discovery fare no better in light of the Supreme Court's pronouncement that there is nothing in the FSIA "forbidding or limiting" post-judgment discovery into a foreign state judgment debtor's assets. *NML Capital*, 573 U.S. at 143. For example, while Greece objects to the production of "diplomatically sensitive information," it has not cited a single example of "diplomatically sensitive information" that would be required to be produced by complying with the requested discovery. Of course, if the discovery would result in the discovery of such material, Greece may make appropriate specific objections concerning the material at issue, or the production of such information can be made subject to an appropriate protective order. Greece is not, however, entitled to refuse to give any discovery into

---

[3] As Leidos explained in its reply memorandum of law in support of its Motion for Relief Pursuant to 28 U.S.C. (s) 1610(c), neither the provisional stay of enforcement of the underlying arbitral award in Greece, nor any subsequent decision by the Greek courts annulling the award, would have any res judicata or other preclusive impact on the enforceability of the DC Court's judgment, which is final, binding and no longer subject to appeal in the United States.

The Honorable Analisa Torres
December 28, 2018
Page 5

its assets or commercial transactions simply because some of the information responsive to the discovery requests might be "diplomatically sensitive."

Greece's scope and burden objections fail for largely the same reason, and fail to acknowledge two key issues: **First**, judgment debtors are ordinarily entitled to broad post-judgment discovery in cases involving sovereign and non-sovereign debtors alike. *See NML Capital*, 573 U.S. at 139 (foreign state judgment debtors are subject to the same broad scope of post-judgment discovery as non-sovereign judgment debtors). As the Supreme Court noted in *NML Capital*, both federal and New York law permit post-judgment discovery into any matter relevant to the satisfaction of a judgment, including assets and commercial transactions outside the United States. *Id*. (citing Fed. R. Civ. P. 69(a)(2) and N.Y. Civ. Prac. Law Ann. § 5223). **Second**, Greece's objections concerning scope and burden, even if valid, cannot be invoked as an absolute shield from **any and all discovery**. Leidos invited Greece to propose what it considered a reasonable scope of discovery and has expressed its willingness to meet and confer to consider potential scope and burden issues. Greece has chosen instead to move for an order barring all discovery. Leidos submits that the "all or nothing approach" taken by Greece is not the proper way to approach the scope and burden issues it has raised. Finally, Greece's objections concerning "burden" ignore the fact that any burden resulting from the need to take post-judgment discovery should appropriately be borne by Greece, whose refusal to satisfy the Judgment has alone necessitated such discovery.

Neither do Greece's scope and burden issues have merit, as Greece cannot demonstrate that the discovery requests are not tailored to seek information relevant to satisfaction of the Judgment. First, Greece's contention that discovery must be limited to "only assets located in New York and used for commercial purposes" is incorrect: That position was thoroughly rejected by the Supreme Court in *NML Capital*. *Id*. at 137. In that case, the Supreme Court made clear that a judgment creditor is not required to demonstrate that the assets about which it seeks discovery are used for a commercial activity in the United States before seeking discovery about those assets. Second, the Court held that the broad scope of post-judgment discovery encompassed information about a foreign state's property and commercial activities not only within the United States,[4] but also abroad. In that case, the Court permitted broad discovery into Argentina's assets around the world "[i]n order to locate Argentina's assets and accounts, learn how Argentina moves its assets through New York and around the world, and accurately identify the places and times when those assets might be subject to attachment and execution (whether under [United States law] or the law of foreign jurisdictions)...." *Id*. Broad discovery into the identity and location of judgment debtor's assets "wherever located" is particularly necessary in a sovereign case due to the complex, international nature of sovereign business dealings, including the common use of agencies and instrumentalities and the possibility that assets may be "hidden or concealed." *See, e.g., First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002) ("courts have compelled judgment debtors to answer questions, that include no territorial limitation, about assets they hold or have transferred") (internal citations omitted); *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1471 (9th Cir.

---

[4] There is no logical basis for concluding that Leidos may only obtain discovery concerning property located within the State of New York, as the Judgment is capable of as-of-right registration in any judicial district in the United States.

The Honorable Analisa Torres
December 28, 2018
Page 6

1992) (upholding district court order authorizing discovery of "worldwide" assets of sovereign instrumentality). Greece does not specify a single document request or interrogatory that seeks information about assets which, on their face, would appear to be immune from execution. *See, e.g., Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 308 F.R.D. 27, 37 (D.D.C. 2015) (discovery requests aimed at foreign state's assets generally are not overly broad unless they appear "on their face … to be directed at property or assets that would be categorically immune from execution under the FSIA").

Similarly, Greece's objection to Leidos' requests for information concerning assets and transactions of agencies or instrumentalities of Greece contravenes well-established jurisprudence in this Circuit holding that such discovery is entirely appropriate in a post-judgment context. *See First City*, 281 F.3d at 54 (permitting discovery into whether central bank was sovereign judgment debtor's alter ego on grounds that creditor must be given freedom to make a broad inquiry to discover hidden or concealed assets) (internal citations omitted); *Funnekotter v. Republic of Zimbabwe*, No. 09 CIV. 08168 CM THK, 2011 WL 5517860, at *4 (S.D.N.Y. Nov. 10, 2011) (foreign state judgment debtor precluded from denying that third party commercial entities were its alter egos after failing to comply with discovery requests seeking to establish facts concerning the extent of foreign state's relationship with those entities).

Finally, Greece objects that the interrogatories served exceed the scope set forth by Local Civil Rule 33.3. First, it is unclear to Leidos that Rule 33.3, which applies "at the commencement of discovery" (presumably at the pre-trial stage), applies in post-judgment proceedings. However, even if it does, Greece has not demonstrated how each of the interrogatories fails to comply with this rule. Indeed, Interrogatory Numbers 2-12 on their face ask Greece to identify the relevant witnesses or custodians with knowledge of Greece's commercial assets or transactions, and/or documents governing such property or transactions. Moreover, Greece has not demonstrated that the interrogatories served are overly burdensome. For example, Interrogatory Number 2 seeks the identities of Financial Institutions that have maintained bank accounts held by or on behalf of Greece in the United States or European Union, while Interrogatory Number 8 seeks the identity of the ministry, department, organ or Greek Instrumentality that owns any government-owned aircraft or shipping vessel not used for military purposes. These interrogatories are highly targeted and seek the identities of potential custodians of documents concerning specific assets.

For the reasons stated above, any motion to quash discovery filed by Greece should be denied. Leidos reserves the right to seek to compel Greece's compliance with the discovery duly served upon it.

                Respectfully yours,

                /s/ Andrew Z. Schwartz
                Andrew Z. Schwartz

                /s/ James E. Berger
                James E. Berger

cc:  All Counsel of Record
     (via ECF and Email)

B4931290.1