

Case 1:18-mc-00327-AT-GWG   Document 50   Filed 07/03/19   Page 1 of 9

*Seaport West*
*155 Seaport Boulevard*
*Boston, MA 02210-2600*

*617.832.1000 main*
*617.832.7000 fax*

July 3, 2019

**Via ECF**

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *Science Applications International Corporation v. The Hellenic Republic*,
              Civil Action No. 18-mc-327

Dear Judge Gorenstein:

      Pursuant to the instructions that the Court issued during the July 1, 2019 conference, I write on behalf of Respondent the Hellenic Republic to update the Court on the status of the Hellenic Republic voluntarily paying Leidos, to update the Court concerning discovery, and to respond to the merits of Leidos's June 25, 2019 arguments regarding the Hellenic Republic's April 12, 2019 interrogatory answers. The Hellenic Republic also explains important factors that it believes warrant consideration in determining what discovery the parties must undertake and on what schedule.

### I.    Update on Voluntary Payment

      As the Hellenic Republic emphasized in its June 27, 2019 letter, its position throughout this litigation has been that if the Greek Supreme Court dismissed the Hellenic Republic's appeal of the arbitral award underlying the judgment, then the Hellenic Republic would pay Leidos. On June 20, 2019, the Greek Supreme Court announced on its website that it was dismissing the Hellenic Republic's appeal. Upon receipt of a certified copy of that decision, the Financial Division of the Hellenic Republic's Ministry of Citizen Protection, which is the agency responsible for paying Leidos, will be able to process that payment. On June 24, 2019, the Hellenic Republic filed a motion with the Greek Supreme Court asking the court to issue a certified copy of its written decision on an urgent basis, citing the need to update its counsel in this case as one of the reasons for the motion. A copy of that motion, with translation, is attached as Exhibit 1. The Greek Supreme Court has since granted the motion and informed the Hellenic Republic that it expects to deliver a certified copy of its decision by tomorrow, July 4, 2019.

ATTORNEYS AT LAW                                                 BOSTON | NEW YORK | PARIS | WASHINGTON | FOLEYHOAG.COM

B5013632.1

July 3, 2019
Page 2

The Financial Division at the Ministry of Citizen Protection has taken the following additional steps toward finalizing payment.

1. The Financial Division has asked the Auditor General's Office to calculate the amount of interest on the award that should be included in the payment.

2. The Financial Division has begun the process of signing the administrative decision (no. 8045/22/111125-1), which the Hellenic Republic must complete to pay Leidos under Greek law.

3. On July 2, 2019, the Financial Division sent a letter to Leidos's counsel in Greece requesting all necessary information, including wiring instructions, that Greek law requires for the Hellenic Republic to remit the funds. A copy of the letter, with translation, is attached as Exhibit 2.

To the best of the Hellenic Republic's knowledge, Leidos has not yet responded to the Financial Division's July 2, 2019 request for information to facilitate payment.[1]

## II.     Update on Discovery and Deposit Arrangement Negotiations

One of the issues discussed during the July 1, 2019 conference was the timing of a deposition of Mr. Sylianos Bakas. Yesterday, the Hellenic Republic informed Leidos that Mr. Bakas is available for a deposition in Athens, Greece on July 29, 2019, should a deposition be necessary.

Moreover, the Hellenic Republic would like to inform the Court of the parties' negotiations toward a deposit into the Registry of the Court, a subject that also arose during the July 1 conference.

During the March 6, 2019 discovery conference, the Court suggested that the Hellenic Republic pay the judgment amount into the Registry pending the outcome of the Greek Supreme Court decision and "avoid all the expense of discovery." Tr. 3/6/18, at 24:4-26:25. The Court told the Hellenic Republic, "unless you can make a case why Leidos is resisting that solution that you're willing to do, we're going full speed ahead on discovery."

---

[1] Pursuant to the Court's instructions, the Hellenic Republic's Legal Council of State has asked the Ministry of Citizen Protection to provide relevant information regarding the payment process in the form of a sworn statement. The Hellenic Republic expects to receive a response to that request and hopefully the requested sworn statement by the end of this week or early next week. We will update the Court as soon as feasible. Obtaining such a sworn statement (for use in another country) on short notice presents a bureaucratic challenge for a foreign state different than a corporation or individual party would encounter. Nevertheless, the Legal Council of State is moving quickly to obtain a sworn statement for the Court. Any such statement would need to be prepared in Greek and then translated into English, adding time to the process. In the meantime, as discussed above, the Hellenic Republic reports tangible progress toward paying Leidos.

July 3, 2019
Page 3

*Id.* at 26:20-22.  The Hellenic Republic followed the Court's recommendation and proposed to Leidos that the Hellenic Republic deposit the judgment amount into the Registry of Court.  The Hellenic Republic first proposed such an arrangement in early April, 2019 and has since negotiated with Leidos in good faith in an attempt to reach agreement on the terms of the deposit.  Attempting to arrange a deposit in this matter presented complications because the parties are simultaneously litigating parallel enforcement actions in the United Kingdom, the Netherlands, and Luxembourg (where Leidos has attached a valuable asset).  Among other things, it was necessary to conform the terms of the deposit and agreed suspension of litigation with the procedural requirements of all four jurisdictions.  The Hellenic Republic sent Leidos the most recent detailed proposal for depositing the judgment amount with the Registry on June 12, 2019.  We would be happy to share a copy with the Court.  Leidos did not respond to it before the parties learned of the Greek Supreme Court's June 20, 2019 announcement of its decision on the appeal.  That decision may moot the issue of the deposit arrangement, but the fact that the Hellenic Republic was willing to deposit the funds in this Court on reasonable terms and conditions attests to its good faith.

**III.     Responses to Leidos's Objections to the Hellenic Republic's Interrogatory Answers**

Against this backdrop, the Hellenic Republic responds to Leidos's criticisms of the Hellenic Republic's objections and answers to Leidos's interrogatories.  The Hellenic Republic reiterates that Leidos admitted during the parties' meet and confer conversations that it seeks supplemental interrogatory answers to apply pressure on the Hellenic Republic to accelerate payment.  The Hellenic Republic continues to believe that is a misuse of discovery procedures.  As set forth below, with respect to the arguments in Leidos's letter, the Hellenic Republic corrects the record in certain respects, informs the Court which information the Hellenic Republic agrees to seek to supplement, and proposes a reasonable time frame for the Hellenic Republic to complete that process, taking into account the progress that has been made on the payment front.

**A.     The Hellenic Republic's General Response to the Interrogatories**

In its General Response, the Hellenic Republic informed Leidos that it does not have any commercial, i.e., potentially attachable, assets in the United States.  Leidos draws unwarranted inferences from that disclosure and then complains about the implications of those inferences.  The Court should disregard Leidos's strawman argument.  In assessing the Hellenic Republic's General Response, it is important to recall the context in which the Hellenic Republic answered Leidos's interrogatories.  The underlying arbitration was in Greece, but Leidos obtained a U.S. judgment and seeks to enforce it in the United States.  In recognition of these facts, the Hellenic Republic inquired of its ministries and missions as to whether it possesses any commercial assets in the United States.  The Hellenic Republic learned that it does not.  That information was not directly responsive to any of Leidos' interrogatories.  Even so, the Hellenic Republic believed that it should share that information with Leidos in the hope that the parties could avoid wasting time on enforcement efforts where there are no assets that could be executed upon in this country.  To that end, the Hellenic Republic included in its 44-page interrogatory responses a 1-pargraph "General

B5013632.1

July 3, 2019
Page 4

Response" to inform Leidos that a combined nineteen ministries and fourteen diplomatic missions are unaware of "any property or assets of Greece located in the United States that is used for commercial, non-military or [non-]diplomatic activity." In other words, the Hellenic Republic does not have any assets in the United States that could be attached as a matter of law. *See* 28 U.S.C. §§1609-1611.

The Hellenic Republic shared this information with Leidos to be helpful. Leidos, however, attempts to spin the Hellenic Republic's good faith as a scheme to withhold information. That is misleading. Contrary to Leidos's assertions, the Hellenic Republic's "general response" does not conflict with any rulings of this Court, as this Court has not made any rulings pertaining to it. The Hellenic Republic voluntarily disclosed that it is not aware of any potentially attachable assets in the United States. There are no negative inferences to be drawn from that good faith disclosure, and the Court should ignore Leidos's attempt to create a dispute where none exists.

### B.    The Hellenic Republic's General Objections to Leidos's Interrogatories

In discussing Leidos's concerns about the Hellenic Republic's general objections, it is important to keep in mind that military assets, diplomatic assets, and assets of a central bank held for its own account are statutorily immune from attachment. *See* 28 U.S.C. §§1609-1611. As to property of the Hellenic Republic's central bank, the Second Circuit has held that central bank funds are presumptively immune unless the party seeking enforcement demonstrates, with specificity, that the funds are not being used for central banking functions as "normally understood." *NML Capital, Ltd. v. Banco Cent. De La Republica Arg.,* 652 F.3d 172, 194 (2d Cir. 2011). Leidos's reliance on a snippet from the central bank's website about the bank acting as "treasurer and fiscal agent of the government" is unavailing, as such functions are routine for central banks. *See id.* at 192 (explaining that acting as a sovereign state's financial agent and depository "are all traditional activities of central banks").[2]

Leidos also incorrectly contends that the Hellenic Republic must be willing to break its own laws to appease Leidos's demands for discovery. It is legitimate for the Hellenic Republic to object to producing information if such production would be illegal, such as if producing certain information would violate laws requiring Greek officials to maintain the confidentiality of national defense secrets. Leidos suggests that the Court should disregard Greek law "under an international comity analysis," but that would require conducting an

---

[2]   *See also Characteristics of a Central Bank*, Assignment Point, https://www.assignmentpoint.com/business/management/characteristics-of-a-central-bank.html ("The Central bank is the banker to the government and also acts as its fiscal agent … [it] receives and disburses payments on behalf of the government and also makes advances to the government"); *Central Banks, Their Functions and Role*, The Balance, https://www.thebalance.com/what-is-a-central-bank-definition-function-and-role-3305827 ("Central Banks serve as the bank for private banks and the nation's government").

analysis as to specific requested information if the issue arises. Leidos's speculative handicapping of a hypothetical comity analysis is no basis to overrule a general objection.

Leidos also insists that the Hellenic Republic cannot object to producing information due to confidentiality concerns. The Hellenic Republic stated in its General Objection No. 4 that it "will not produce any such information or documents except pursuant to an appropriate stipulation and/or protective order sufficient to safeguard the confidentiality of such information or documents." Leidos states, "Greece has unreasonably refused to agree to Leidos's proposed protective order." Leidos Ltr. at 5. That assertion is misleading. The Hellenic Republic drafted the protective order, not Leidos. The Hellenic Republic provided a draft protective order to Leidos on February 22, 2019. Leidos did not respond with its proposed changes until March 27, 2019. The latest version of the protective order that the Hellenic Republic has proposed is attached as Exhibit 3. The only material remaining disagreement with respect to the protective order is that Leidos insists that the Hellenic Republic log confidential national defense information and submit it for *in camera* review. That is not a realistic approach for a sovereign government. As the Second Circuit stated in *Aurelius Capital Master, Ltd. v. Republic of Argentina*, "[w]here the diplomatic (or military) documents of a *foreign* state are concerned, the district courts' usual practice of examining contested documents *in camera* may not be practicable." 589 Fed. Appx. 16, 18 (2d Cir. 2014) (emphasis in original). The Second Circuit instructed further, "[t]he district court will modify usual procedures to accommodate that unusual eventuality in a way that is effective and respectful." *Id.* Leidos's proposal is anything but respectful, and the Hellenic Republic cannot agree to it. In *Aurelius*, the Second Circuit encouraged phasing discovery to hold off thorny issues such as the confidentiality of national defense information until it is necessary to address them. *Id.* The Court should do the same here.

  C.  **Leidos's Objections to the Hellenic Republic's Answers to Interrogatories No. 2 to 7**

    1.  <u>Interrogatory No. 2</u>

In Interrogatory No. 2, Leidos asks the Hellenic Republic to identify and provide information about any financial accounts that it has held in the United States or the European Union (outside of Greece) since the date of the judgment. The Hellenic Republic responded that it is aware of no such accounts except for accounts used exclusively for diplomatic or national defense purposes. Leidos seeks the requested information anyway. The Hellenic Republic asks that the Court appreciate that Interrogatory No. 2 involves matters of significant governmental sensitivity. The Hellenic Republic is a member of NATO and a military ally of the United States in a strategically vital part of the world. Identifying diplomatic or defense accounts, such as financial accounts that the Hellenic Republic maintains in the United States for the purpose of purchasing weapons from the United States for its military, would be highly problematic for reasons of national security. It is conceivable that the United States might also have concerns about the disclosure of such information. In light of these sensitivities, the Hellenic Republic requests that the Court defer discovery of any financial accounts used for diplomatic purposes or military procurement. As the Second Circuit stated in *Aurelius*, "we urge the district court to closely

July 3, 2019
Page 6

consider [the Hellenic Republic's] sovereign interests in managing discovery, and to prioritize discovery of those documents that are unlikely to prove invasive of sovereign dignity." 589 Fed. Appx. at 18. As to the balance of Interrogatory 2, the Hellenic Republic agrees to investigate further to see if it can find any accounts that it is able to disclose without comprising its national security or diplomatic interests or obligations.

        2.        <u>Interrogatory No. 3</u>

In Interrogatory No. 3, Leidos asks the Hellenic Republic to identify its instrumentalities, describe its ownership interests in its instrumentalities, identify the laws that govern its instrumentalities, identify the instrumentalities' officers and directors, and state whether there are plans to privatize the instrumentalities in whole or in part. As Leidos acknowledges, the Hellenic Republic identified 53 instrumentalities and provided 17 pages of information about them. Leidos, however, complains that the Hellenic Republic did not also provide information concerning cash flows between the instrumentalities and the Hellenic Republic itself. Leidos's position is based on the parties' colloquy with the Court during the March 6, 2019 conference concerning the general scope of permissible discovery. But upon further review of the interrogatories themselves, it is clear that Interrogatory No. 3 does not request information about cash flows between the Hellenic Republic and its instrumentalities. Nor did Leidos request such information in any of its other interrogatories.

Pursuant to Fed. R. Civ. P. 33, the Hellenic Republic should not be required to provide answers to interrogatories that Leidos never served. Nevertheless, to avoid further controversy, the Hellenic Republic is willing to agree to gather such information concerning individual payments in excess of $500,000 from any of the identified instrumentalities to the Republic since entry of the judgment if the Court so prefers. The Hellenic Republic estimates that it would need approximately sixty days to investigate and compile information concerning such payments between itself and its instrumentalities.

        3.        <u>Interrogatories No. 4 and 6</u>

Interrogatories No. 4 and 6 concern commercial transactions outside of Greece and payments from persons or entities outside of Greece. The Court heard argument concerning these interrogatories during the March 18, 2019 conference. The Court ordered the parties to meet and confer to reach a common understanding of the scope of the interrogatories consistent with the Court's rulings. Tr. 3/18/19 15:20-18:15. The parties met and conferred on March 20, 2019. During that conference, the Hellenic Republic volunteered to make the first attempt at drafting a mutually-agreeable combined interrogatory by March 22, 2019. On March 22, counsel for the Hellenic Republic emailed to counsel for Leidos a draft revised combined Interrogatory No. 4 and 6. The email is attached as Exhibit 4. Leidos never responded to it.

Even though Leidos abandoned the court-ordered meet-and-confer process, the Hellenic Republic answered Interrogatories No. 4 and 6 as best it could. The Hellenic Republic agrees to continue searching for information responsive to these interrogatories.

B5013632.1

July 3, 2019
Page 7

The Hellenic Republic requests sixty days to conduct that investigation and supplement its answers in the event that it discovers additional responsive information.

        4.      <u>Interrogatories No. 5 and 7</u>

Interrogatories No. 5 and 7 concern debts owed to the Hellenic Republic and payments to be made to the Hellenic Republic, respectively. As of the date of its answers, the Hellenic Republic found only one responsive debt/payment and identified it. The Hellenic Republic agrees to resume its search and supplement its answers if it finds any additional responsive information. As with its other commitments discussed above, the Hellenic Republic asks for sixty days to conduct its search and supplement its answers as appropriate.

**IV.**    **<u>Further Factors for the Court to Consider</u>**

In addition to the foregoing, as the Court considers what discovery to require at this stage of the proceedings, and on what timetable, the Hellenic Republic respectfully asks the Court to take into account the following factors:

The Hellenic Republic had the legal right to challenge the underlying arbitral award in the Greek court system, and it did so. The dispute was a controversial, high-profile, high-stakes matter, involving allegations of corruption of State officials. As a foreign sovereign government with a public fisc to protect, it was entirely appropriate for the Hellenic Republic to challenge the award through the available legal channels. And it was entirely appropriate for the Hellenic Republic to continue doing so even after a judgment was entered on the foreign arbitral award in the U.S. courts.

While Leidos's counsel expressed concern that Greece might get a "home court advantage" in the Greek Supreme Court, that has not occurred. There was a legitimate, impartial legal proceeding in Greece that culminated in the announcement of a decision in Leidos's favor on June 20, 2019. Leidos cannot complain that it was treated unfairly. The Hellenic Republic may ultimately have lost the case, but there was nothing about the process or the outcome that constitutes bad faith by the Hellenic Republic. Consistent with its prior representations to this Court, now that it has exhausted its rights to contest the award, and the award has been upheld, the Hellenic Republic is taking steps to pay Leidos, again in good faith.

All agencies of the Hellenic Republic with competence on the matter have promptly undertaken preparatory actions to facilitate payment to Leidos. As mentioned above, the Legal Council of State requested that the Supreme Court expedite the formal issuance of its Judgment. Its request was accepted and the online docket of the Court shows that earlier today, the Judgment was signed by the Rapporteur Judge and the President of the Court. The Financial Division of the Ministry of Citizen Protection, the Greek agency responsible for the payment, has requested from Leidos's counsel in Greece payment details and processed the various administrative formalities required under Greek law for the payment.

B5013632.1

As would likely be the case with an award of this size against any government, including the United States, payment will not happen immediately upon the appellate court's announcement of its decision. This is especially true where the Legal Council of State is not expected to receive the Greek Supreme Court's written decision until tomorrow, and that decision must then be presented to the Ministry of Citizen Protection for processing. It bears emphasis that the Greek Supreme Court announced its decision less than two weeks ago.

Absent some evidence of bad faith, in these circumstances a foreign sovereign government like the Hellenic Republic should be given a reasonable opportunity to make the payment before having to re-engage with an invasive world-wide discovery campaign. Leidos acts as if it is pursuing a recalcitrant rogue terrorist state that is an enemy of the United States, as opposed to a member of the European Union and NATO and ally of our country. But the Hellenic Republic is not some scofflaw that is seeking to evade its payment obligation following the announcement of the Greek Supreme Court's decision. As the Second Circuit recognizes, as a foreign sovereign state the Hellenic Republic "is entitled to a degree of grace and comity" in the discovery process. *Aurelius Capital Master,* 589 Fed. Appx. at 18. That militates in favor of deferring or sequencing the deadlines for any resumed discovery until the Hellenic Republic has had a reasonable time to arrange the payment, taking into account the surrounding circumstances, including this Sunday's national elections in Greece, to the extent they have any impact at all. It is unfortunate that the eruption of this discovery dispute coincides with those elections. That, however, is a function of Leidos waiting two months, with no legitimate explanation, to raise issues about the Hellenic Republic's interrogatory answers. The elections were not called to disadvantage Leidos.

While Leidos is now champing at the bit to pursue additional discovery, admittedly because it thinks that will accelerate payment, the fact remains that Leidos went into discovery hibernation between April 12, 2019, when the Hellenic Republic timely served its initial interrogatory answers, and May 30, 2019, and did not raise any issue about the interrogatory answers for another two weeks. Contrary to what was suggested at the July 1, 2019 hearing, Leidos's inactivity in discovery cannot fairly be attributed to the parties' negotiations about the arrangement under which the Hellenic Republic would deposit funds for possible payment to Leidos into this Court's registry. There was, for example, a lull in those negotiations between April 26, 2019 and June 12, 2019. Moreover, given the intensity with which Leidos now wishes to proceed, Leidos certainly could have multi-tasked while negotiations were ongoing. For whatever reason, it instead opted not to pursue further discovery from the Hellenic Republic for an extended period.

This dilatory behavior by Leidos, and the current payment process in the Hellenic Republic, should also be evaluated in the historical context of the dispute. The matter arises from the 2004 Athens Olympics. The arbitration started in 2009. The award was issued in 2013. Judgment on the award was first entered in the U.S. in 2017. At this point, if Leidos hypothetically has to wait another month to get paid (with interest), that is not a material amount of time. Likewise, in the unlikely event that any purpose would be served by resuming discovery, there is no compelling reason why such discovery should be

July 3, 2019
Page 9

accelerated, and Leidos would suffer no prejudice if further discovery deadlines were extended while payment arrangements are being made.

   In sum, while the Hellenic Republic appreciates the Court's concern with moving discovery forward in this matter, there are countervailing considerations that warrant giving the Hellenic Republic more time and flexibility with regard to post-judgment discovery than would otherwise be appropriate. The Hellenic Republic requests that the Court take these factors into account in exercising its discretion in ruling on Leidos's requests.

              Respectfully yours,

              /s/ Andrew Z. Schwartz

              Andrew Z. Schwartz


cc: All Counsel of Record (via ECF)

B5013632.1